# In the United States Court of Federal Claims

(Filed November 8, 2001)

FILED
NOV 8 2001
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ****************************************** | * | |
| **YANKEE ATOMIC ELECTRIC COMPANY** | * | |
| **CONNECTICUT YANKEE ATOMIC POWER COMPANY** | * | |
| **MAINE YANKEE ATOMIC POWER COMPANY** | * | **Case Nos.** |
| **FLORIDA POWER & LIGHT COMPANY** | * | **98-126C, 98-154C,** |
| **NORTHERN STATES POWER COMPANY** | * | **98-474C, 98-483C,** |
| **DUKE POWER, A Division of DUKE ENERGY CORP.** | * | **98-484C, 98-485C,** |
| **INDIANA MICHIGAN POWER COMPANY** | * | **98-486C, 98-488C,** |
| **SACRAMENTO MUNICIPAL UTILITY DISTRICT** | * | **98-614C, 98-621C,** |
| **SOUTHERN NUCLEAR OPERATING COMPANY, et al.** | * | **99-447C, 00-440C,** |
| **COMMONWEALTH EDISON COMPANY** | * | **00-697C, 00-703C,** |
| **BOSTON EDISON COMPANY** | * | **01-115C, 01-116C,** |
| **GPU NUCLEAR, INCORPORATED** | * | **01-249C** |
| **WISCONSIN ELECTRIC POWER COMPANY** | * | |
| **POWER AUTHORITY OF THE STATE OF NEW YORK** | * | **UNCONSOLIDATED** |
| **OMAHA PUBLIC POWER DISTRICT** | * | |
| **NEBRASKA PUBLIC POWER DISTRICT** | * | **Judge Diane Gilbert Weinstein** |
| **TENNESSEE VALLEY AUTHORITY** | * | |
| | * | **Discovery Judge** |
| **Plaintiffs,** | * | |
| | * | |
| v. | * | |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| **Defendant.** | * | |
| ****************************************** | | |

# Order

On October 26, 2001, defendant filed a motion to adopt a plan for the production of relevant electronic mail as part of coordinated discovery proceedings and pursuant to the court's September 26, October 3 and October 23, 2001 orders. The plan is opposed by none of the above-captioned plaintiffs except Yankee Atomic Electric Company, Connecticut Yankee Atomic Power Company, and Maine Yankee Atomic Power Company (the Yankee Utilities).

The motion to adopt defendant's plan for the production of e-mail is granted with respect to all of the parties covered by the coordinated discovery proceedings. Judge Merow has ordered the Yankee Utilities to participate in coordinated discovery proceedings concerning e-mail production "fully subject" to this court's directions. See order issued by Judge Merow on November 8, 2001, in **Yankee Atomic Electric Co., v. United States**, No. 98-126C; **Connecticut Yankee Atomic Power Co., v. United States**, No. 98-154C; and **Maine Yankee Atomic Power Co., v. United States**, No. 98-474C.

DIANE GILBERT WEINSTEIN
Judge, U.S. Court of Federal Claims

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) |
| CONNECTICUT YANKEE ATOMIC POWER COMPANY, | ) |
| MAINE YANKEE ATOMIC POWER COMPANY, | ) |
| FLORIDA POWER & LIGHT COMPANY, | ) |
| NORTHERN STATES POWER COMPANY, | ) 98-126C, 98-154C, |
| DUKE POWER, A Division of DUKE ENERGY CORP., | ) 98-474C, 98-483C, |
| INDIANA MICHIGAN POWER COMPANY, | ) 98-484C, 98-485C, |
| SACRAMENTO MUNICIPAL UTILITY DISTRICT, | ) 98-486C, 98-488C, |
| SOUTHERN NUCLEAR OPERATING COMPANY, et al., | ) 98-614C, 98-621C, |
| COMMONWEALTH EDISON COMPANY, | ) 99-447C, 00-440C, |
| BOSTON EDISON COMPANY, | ) 00-697C, 00-703C, |
| GPU NUCLEAR, INCORPORATED, | ) 01-115C, 01-116C, |
| WISCONSIN ELECTRIC POWER COMPANY, | ) 01-249C |
| POWER AUTHORITY OF THE STATE OF NEW YORK | ) |
| OMAHA PUBLIC POWER DISTRICT, | ) |
| NEBRASKA PUBLIC POWER DISTRICT, | ) |
| TENNESSEE VALLEY AUTHORITY, | ) UNCONSOLIDATED |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) (Judge Diane |
| | ) Gilbert Weinstein) |
| THE UNITED STATES, | ) |
| | ) Discovery Judge |
| Defendant. | ) |

**MOTION FOR THE COURT TO ADOPT DEFENDANT'S E-MAIL PLAN**

Pursuant to the Court's October 23, 2001 order, the Government submits, and respectfully moves for the Court to adopt, the following plan for the production of relevant electronic mail. We have conferred with counsel for the plaintiffs, and only the Yankee plaintiffs oppose this plan.[1] All the other utilities that are party to the coordinated discovery proceedings do not oppose the following plan.

[1] "Yankee plaintiffs" refers to the plaintiffs in the following cases, currently before Senior Judge Merow: YANKEE ATOMIC ELECTRIC COMPANY, No. 98-126C (Fed. Cl.); CONNECTICUT YANKEE ATOMIC POWER COMPANY, No. 98-154C (Fed. Cl.); MAINE YANKEE ATOMIC POWER COMPANY, No. 98-474C (Fed. Cl.). "Yankee cases" refers to these three cases currently before this court.

## INTRODUCTION

On June 8, 1999, pursuant to a motion by the Yankee plaintiffs, this Court issued orders in the Yankee cases requiring the preservation of all e-mail back-up tapes within 19 offices of the United States Department of Energy ("DOE") relevant to scheduling, pace, capacity, acceptance, and removal of SNF pursuant to the Standard Contract, 10 C.F.R. Part 961. A3. To date, DOE has spent over $2 million complying with this order, and preserved over 12,000 backup tapes. A16. This order also contained a proposed procedure – which the parties could vary by agreement – for the search and retrieval of e-mail from DOE's back-up tapes. A4.

On June 14, 2001, Judge Wiese directed the parties to the spent nuclear fuel ("SNF") litigation to file a proposal with the Court for coordinated discovery. On July 9, 2001, the parties, including the Yankee plaintiffs, filed a "Joint Motion For An Order For Coordinated Discovery." A5-14. In this proposed motion, the parties also agreed that, "[o]n or before August 31, 2001," the parties "submit a plan to address the production of e-mail by the parties." Nothing in this submission requested a "separate litigation track" for the Yankee plaintiffs' e-mail production. The Court ultimately adopted this proposal by order dated September 26, 2001, and also moved the date for submission of an e-mail plan by the parties to October 1, 2001. A24.

On August 14, 2001, as contemplated by the parties, the defendant proposed an e-mail production plan to all the plaintiffs within the SNF litigation. A15-22. As proposed, the goal of this plan was to complete the e-mail production obligations of all of the plaintiffs in the SNF litigation and defendant in an efficient, reciprocal, and cost-effective manner. A15-16 & 18. Defendant also requested that the plaintiffs identify their e-mail systems and the steps that they have taken to preserve relevant e-mail to date. A15-16.

On August 20, 2001, the Yankee plaintiffs sent the Government a letter in which they stated: "Your suggestion that the Court's requirements for preservation of the government's e-mail should apply in some manner to the plaintiffs is mistaken." A26. In contrast, on August 21, 2001, the remaining plaintiffs sent a letter offering to meet with us on August 23, 2001, "to discuss the issue of e-mail review and production." A31. The parties met by telephone conference call on August 23, 2001. A34 & 37. During this conference, the Government addressed the details of its proposed e-mail production plan and its e-mail systems, and emphasized that any agreement that the parties reached regarding preservation anbd production of the Government's e-mail systems should be reciprocal, with each plaintiff under a similar obligation to preserve their own e-mail systems.

On August 30, 2001, we again received two vastly different letters: one from the Yankee plaintiffs and one from the remaining plaintiffs. In their letter, the non-Yankee plaintiffs stated that they were "in principle in agreement" with several of the milestones set forth in our plan, but that they needed a further opportunity to discuss the details. A34-35. In contrast, the Yankee plaintiffs expressed dissatisfaction with our proposed plan because they alleged "it is inconsistent with important aspects of Judge Merow's June 8, 1999 Orders." A37. Nevertheless, the Yankee plaintiffs did not provide any insight with respect to what type of "alternative approach" they would consider that was both reciprocal and did not unduly burden any party. By letter dated September 6, 2001, the Government responded to these letters. A39. In this letter, the Government advised the plaintiffs that we could not meet again to discuss an e-mail plan until we received a comparable description of their e-mail systems and preservation efforts. Id. In early to mid-September, we received several responses to this request. Nevertheless, all of them

consistently portrayed that none of the utilities were expending efforts similar to the Government to preserve e-mail, i.e., none were preserving daily, or even monthly, back-up tapes. A52-54.

On September 27, 2001, the Government sent a letter to the plaintiffs, which stated:

> As we previously advised you, the onerous retention requirements imposed by the Court's June [8], 1999 order cost DOE tens of thousands of dollars per month. This continued expense, when the plaintiffs cannot identify any search confines or protocol, and when plaintiffs have not placed themselves under a similar retention burden, seems unreasonable. If we do not receive a reasonable proposal from the plaintiffs by October 12, 2001, we will assume that they have abandoned any desire to search DOE back-up tapes, and we will seek relief from the retention requirements imposed by the Court's June [8], 1999 order. If the plaintiffs wish to pursue the e-mail issue, please contact me so that we can determine the most appropriate manner in which to respond to Judge Weinstein's order.

A42-43.

The plaintiffs responded in two letters on September 28, 2001; the non-Yankee utilities again responded separately from the Yankee plaintiffs. The non-Yankee plaintiffs expressed a willingness to narrow their searches to the Office of Civilian Radioactive Waste Management ("OCRWM"). A45. They also expressed a willingness to meet with the Government to discuss relief from the Government's preservation efforts. A46. In the Yankee plaintiff's letter, they reiterated that they did not wish to agree to any plan that either relieved the Government of any of its burden or triggered an obligation to search and retrieve e-mails until December, 2001. A48.

Pursuant to the Government's October 1, 2001 unopposed motion for enlargement, the Court granted the parties until October 22, 2001 to file a proposed e-mail plan. A55. On October 4, 2001, the Government we filed a "Motion To Transfer Responsibility For E-mail Preservation And Production Issues To The Coordinated Discovery Proceedings," a copy of

which we requested leave to file with the Discovery Judge on October 10, 2001. Also on October 10, 2001, the Government and the plaintiffs, including the Yankee plaintiffs, met to discuss the Government's proposed e-mail production plan. A56. At the conclusion of this meeting, the Government and the non-Yankee plaintiffs had agreed in principle to a reciprocal plan that included relieving the Government of the requirement to maintain daily and weekly e-mail backup tapes. The non-Yankee plaintiffs confirmed this position by letter on October 15, 2001. A57-58. In contrast, by letter dated October 10, 2001, the Yankee plaintiffs wrote a letter to advise that they only considered the October 10, 2001 meeting to be a one-sided informational meeting where only the Government would have any obligation to present proposals. A62. To emphasize the point, on October 12, 2001, lead counsel from the Yankee plaintiffs wrote the Government another letter wherein he advised that the representative for the Yankee plaintiffs at the October 10, 2001 meeting possessed no authority to compromise with respect to our proposed e-mail plan. A65.

On October 17, 2001 the Government responded to the plaintiffs, in part, as follows:

> Further, the primary condition we expressed with respect to our proposed e-mail discovery plan is that, whatever we agree upon, the terms of the plan must be reciprocal. Consequently, the conditions are acceptable to us if all of the plaintiffs are bound by these same conditions, specifically: (1) all parties should impose a non-delete policy with respect to relevant e-mail; (2) all parties preserve any backup tapes or system-wide "snapshots" from 1998 and prior; and (3) on a "go forward" basis, all parties preserve annual system-wide backup tapes of servers that contain relevant e-mail. With regard to the third condition as it would apply to DOE, DOE would only have to preserve the annual system-wide backup of certain servers within the [OCRWM].

* * *

> As you know, the purpose of last week's meeting was to discuss a reciprocal e-mail plan, a proposal for which is contained in our August 14, 2001 letter. This plan is due to the Court on October 22, 2001, and we were surprised that the Yankee plaintiffs came to the meeting unprepared to discuss it.

A71.

On October 19, 2001, the Yankee plaintiffs responded stating that their cases are "on a separate litigation track." A74. In this lètter, the Yankee plaintiffs did not recognize our proposal, offered no alternate plan, and would not enter into any agreements to anything that would bind them to any reciprocal obligation regarding presrrvation and production of their own e-mail, including any further discovery of that e-mail. A76. Finally, the Yankees did not offer to compromise any specific aspect of the Court's June 9, 1999 orders regarding e-mail preservation, and requested that we so advise the Court. A76. The only proposal by the Yankee plaintiffs, in fact, merely repeated the Court's June 8, 1999 orders, i.e., "that the government preserve all pertinent e-mail in a manner that allows us to discovery that e-mail pursuant to the procedure set out in the June 8, 1999 orders." A75.

The Government replied to the Yankee plaintiffs by letter on October 22, 2001. A79-83. In this letter, we stated, in part:

> As you recognize, the plaintiffs in the three Yankee cases agreed, and in fact requested, to participate in the coordinated discovery proceedings in these cases. We are disappointed that the Yankee utilities have chosen neither to respond to our proposed e-mail plan nor to cooperate to formulate a plan that makes sense for all parties. With respect to the content of our proposal for a continued preservation and search plan, we refer you again to our August 14, 2001 and October 17, 2001 letters. We would appreciate it if you would respond to our plan, as outlined in those letters. If you disagree with it, we would request that you propose an alternate plan.

A79. In this letter, we also advised the Yankee plaintiffs of an e-mail plan that had been discussed and tentatively approved, in principle, by all the non-Yankee utilities. A81-82. The plan ultimately approved by the non-Yankee utilities is set forth fully below. However, to date, we have received no alternate plan or proposal from the Yankee plaintiffs, other than their position that DOE should continue to expend enormous sums to preserve every backup tape that it creates (without any reciprocal obligation by the Yankee plaintiffs).

On October 23, 2001, pursuant to the Government's unopposed motion for enlargement, the Court allowed the parties until October 26, 2001, to file a plan for addressing the production of e-mail. A85. Because we could not reach a consensus on a reciprocal plan with the Yankee plaintiffs, we file this motion for the Court to adopt the following e-mail plan.

## ARGUMENT

The purpose of the coordinated discovery proceedings is to minimize differing treatment of discovery issues and to complete discovery in an expeditious and efficient manner. Given the nature of e-mail preservation, absent a single order applicable to all electronic discovery, the Government is forced to comply with whichever order is the most onerous. We have requested relief from the Yankee plaintiffs, who possess the right to vary the Court's June 8, 1999 order by agreement. A4. Nevertheless, the Yankee plaintiffs have not been receptive to any of our suggestions, including that the obligations contained in the Court's orders and that any proposals be reciprocal. A74-83.

As set forth below, the plan that the Government proposes here seeks to complete all electronic evidence discovery by December 30, 2001. Given the fact that the Yankee plaintiffs are on a more aggressive litigation track than their counterparts, we fail to understand why they

do not welcome our more aggressive e-mail time line. In fact, our time line seeks to completes all e-mail discovery before the date when, under the Court's June 8, 199 order, the parties wouldstill be attempting to agree upon some type of search protocol. Even more troublesome is that the Yankee plaintiffs have rejected any attempts to lessen the Government's excessive burden which, to date, has cost DOE over $2 million and has created a cache of over 12,000 backup tapes. A16. Finally, as recognized by all the plaintiffs, except the Yankee plaintiffs, our proposed plan forwards a resolution that makes sense and does not unduly burden any party.

From the outset of the parties' negotiations upon the e-mail issue, the Government has sought to focus the parties upon specific categories of information (via search terms) and pertinent offices (OCRWM in the case of the Government). A18-19 & 79-83. The Yankee plaintiffs have never agreed to reduce our burden in any respect, while at the same arguing that they have no such reciprocal obligations. A74-83. There is a preference among the Federal courts to require the parties to focus upon specific categories of information when computer systems are at issue. Alexander v. FBI, 188 F.R.D. 111, 117 (D.C. Cir. 1998) (refusing to require defendants to completely restore all deleted files and e-mail where plaintiff did not propose "targeted and appropriately worded searches of backed-up and archived e-mail and deleted hard drives for a limited number of individuals").

As we indicated in our October 22, 2001, motion for enlargement upon the e-mail plan issue, the parties met on October 10, 2001, to discuss the Government's proposed e-mail plan, contained in our August 14, 2001 letter. Since that time, the parties have exchanged correspondence and, with exception of the Yankee plaintiffs, the plaintiffs do not object to the following plan regarding the future preservation and production of e-mail. Accordingly, we

propose the following e-mail plan, which we request that the Court adopt to resolve any and all issues regarding the preservation and production of electronic mail:

1. On a go-forward basis, all parties would agree that no further preservation or retention requirements with respect to e-mail and electronic evidence will apply to any of the parties. Subject to the Court's approval, this agreement and the following proposal would replace the requirements contained in the Court's June 8, 1999 order regarding e-mail in the three Yankee cases.[2]

2. All parties agree to preserve any e-mail backup tapes that exist from the 1988-1996 time frame which may potentially contain relevant information. DOE will only have to preserve such tapes to the extent that they are from the Office of Civilian Radioactive Waste Management ("OCRWM").

3. It appears that the Government currently has two tapes to be searched from the 1988-1996 time frame, although we do not know the degree to which those tapes have degraded over time. By November 5, 2001, the utilities will identify any e-mail backup tapes that they possess from the 1988-1996 time frame. By November 9, 2001, the parties will resolve details regarding the scope, content, timing, and format of any proposed searches of these Government and utility e-mail tapes from the 1988-1996 time frame in a written protocol. This protocol will contain a list of agreed individuals (no more than 12) and search terms (no more than 20) to be used to conduct the searches. The parties agree evenly to share the cost of any searches of the two Government tapes performed pursuant to this paragraph, which cost should not exceed

[2] The non-Yankee plaintiffs take no position regarding either the Government's "Motion to Transfer Responsibility For E-mail Preservation And Production Issues To The Coordinated Discovery Proceedings" or which judge of this Court should decide these issues.

$15,000 for each tape. In the case of any utility tape searched pursuant to this paragraph, the Government and the utility with the tape[s] agree to share the cost evenly of performing any search of the tape, which cost should not exceed $15,000 for each tape.

4. By November 30, 2001, the Government and the utilities should conduct their respective keyword searches and obtain preliminary results, subject to any technical difficulties that may arise in attempting to restore the tapes.

5. By December 30, 2001, the Government and the utilities should screen any documents produced pursuant to the keyword searches for privilege and produce responsive documents.

## CONCLUSION

The Government and the non-Yankee plaintiffs have worked to achieve a sensible e-mail plan that makes sense for all parties. Consequently, defendant respectfully requests that the Court adopt the foregoing e-mail preservation and production plan for all parties over the objections of the Yankee plaintiffs.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

David M. Cohen / by HD Foster

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
Tele: (202) 307-6288

Attorneys for Defendant

OF COUNSEL:
BRYANT S. BANES
Trial Attorney
Department of Justice
Washington, D.C.

October 26, 2001

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of April 2004, a copy of foregoing "DEFENDANT'S REPORT IN RESPONSE TO NOTICE OF PRE-DISCOVERY CONFERENCE TO BE CONVENED ON APRIL 30, 2004," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Marian E. Sullivan